IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Case No. BK25-80366 |
| | ) | |
| RICHARD N. BERKSHIRE, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| | ) | |

## Order Granting Motion to Appoint a Chapter 11 Trustee

THIS MATTER is before the court on the motion of the United States Trustee (the "U.S. Trustee") to appoint, for cause, a Chapter 11 trustee. (Doc. #25). Amy B. Blackburn appeared for the U.S. Trustee. James E. Bachman appeared for the debtor Richard N. Berkshire. Eric W. Knutson appeared for Berkshire Partnership, LP and for the trustee of the Robert H. Berkshire Trust. Because the U.S. Trustee established cause for appointment of a trustee by a preponderance of the evidence based on the debtor's prepetition conduct, and by clear and convincing evidence based upon the debtor's prepetition and postpetition conduct, the motion is granted.

## Findings of Fact

The debtor filed his bankruptcy petition on April 18, 2025, after a $2,666,767.74 judgment[1] for breach of fiduciary duties was entered against him. The judgment was entered by the District Court of Douglas County, Nebraska in favor of his sisters, Leslie Berkshire and Laurie Meyers. The debtor and his sisters were partners in Berkshire Partnership LP. For several years the debtor was its managing partner.

In its judgment order, the district court found the debtor "repeatedly breached fiduciary duties", including the duties of loyalty, care, and good faith and fair dealing. Underlying the judgment were factual findings the debtor used partnership assets to "funnel money to himself and friends" in an amount greater than the value of the debtor's partnership interest. The debtor comingled accounts. He obtained unnecessary loans. He did not provide all required accountings. Accountings he did provide were inaccurate and incomplete. He could not identify the basis for significant transactions, including a $220,000 payment to himself. He spent partnership funds on items with "no legitimate business or partnership purpose." He allowed third parties, including a contractor, to control partnership assets. When money went missing, he accused the contractor of stealing funds. Yet once

---

[1] The order became final on June 4, 2024. Under Nebraska law, the judgment interest rate as of that date is 7.334%. *See* Neb. Rev. Stat. § 45-103.

discovered, the debtor did not attempt to limit partnership losses or recover the allegedly stolen funds.

A second breach of fiduciary duty lawsuit was pending at the time the debtor filed his bankruptcy case. The second lawsuit involved the debtor's breach of fiduciary duties as trustee of his father's trust, of which he and his sisters were beneficiaries. The debtor's sisters sued the debtor individually and as trustee. On April 25, 2025, the county court removed the debtor as trustee and entered a judgment finding the debtor forfeited all interest in the trust, having already disbursed to himself $292,495.51 more than the value of his interest. The county court judgment was entered postpetition because the debtor did not inform the county court of the bankruptcy filing.

In its order the county court found the debtor breached duties including good faith, loyalty, impartiality, prudent trust administration, record keeping and safeguarding, and to inform and report. The debtor made unauthorized payments to himself and others from the trust, including a payment of $101,207 to himself and $195,000 to his attorney. These payments were made after the debtor assured the court he would not make payments from the trust without court approval. As in the district court case, the county court found the debtor made inaccurate and incomplete accountings and comingled funds.

In the two months since the debtor filed this bankruptcy case, the debtor has not accurately accounted for estate assets. He incorrectly scheduled one bank account as containing $6,500 when it was overdrawn $1,017.60. He scheduled another account as containing $2,913 when it held $1,188.81. He did not schedule a Coinbase account to which he deposited approximately $10,000 in 2020. During his 341 meeting he testified he owns a time share in Cabo but received no funds from it. Then in his monthly operating report he listed a $23,300 deposit on April 30 from Cabo Golf Vacations. His monthly operating reports refer to attached bank statements which are not attached. He did not open a DIP account or file a motion seeking a waiver of the requirement.

The debtor comingled bankruptcy estate funds with non-estate funds. He listed a $107,634 *deposit* as a "personal living *expense*" on his April operating report. He testified the deposit was from the liquidation of a trust of which his son is the beneficiary. Yet he deposited the funds into his personal operating account. $60,000 of the funds were used to purchase a vehicle, presumably for his son.

The debtor made unauthorized payments. He paid his attorney $7,500 on April 30, and $5,000 on June 19, 2025. Yet his attorney is not officially retained. The payments were not approved. From April 24 to April 27, he paid Courtney Quinn $5,000 for "appliances", and $10,000 for "labor", providing no receipts or invoices to support the charges. He could not identify the appliance purchased. Regarding the labor services, he testified, "she needed the money" and the "services were probably performed after the check".

The debtor's spending does not match his schedules. It is not clear whether his spending is inside or outside the ordinary course, the latter of which is not yet approved. His schedule J lists monthly expenses totaling $16,191. Yet the debtor withdrew $20,000 cash for "living expenses" - $10,000 on April 23, and another $10,000 one week later, on April 30. He transferred $25,000 on April 25 from one of his accounts to another for "construction expense".

Underlying the debtor's failures appears to be a general attitude the reporting and trustee's requests for documentation are irrelevant and unnecessary. The debtor asserts he owns an IRA containing over $3 million. During the hearing, the debtor's counsel represented the IRA assets are invested in Berkshire Hathaway stock. The debtor also contends he is a beneficiary of his mother's trust. But the trust is not yet funded.

During his 341 meeting the debtor testified, "I'm not exactly sure what the fascination is with thousands of dollars when we're talking about a bankruptcy in which there's one creditor that's owed two and a half million dollars." Likewise, the debtor states in his affidavit:

> It is clear that a focus on the Debtors income and bank balances will have no bearing on the Debtor's ability to successfully implement the plan of reorganization, and that the efforts of the UST to insure the creditors are paid is to focus on the assets of the Debtor that will be used in paying [my sisters], namely the $2M or $5M or $10M that is held in trust and controlled by [my sisters].

The debtor's plan of reorganization is to appeal the district court judgment. The appeal is presently stayed under 11 U.S.C. § 362. The debtor will not voluntarily agree to lift the stay until after his plan of reorganization is approved.[2] If it is affirmed, he will pay the judgment in full within 30 days of the decision and will dismiss this bankruptcy case. The sources for the payment are the trust and his IRA. It is not certain these two assets will collectively pay all claims. The value of the debtor's interest in the trust is not established by the evidence to any reasonable degree of certainty. The trust contains a relatively complex distribution scheme to multiple beneficiaries. It owes taxes, interest, and penalties to the IRS. According to the debtor, his IRA contained $3,004,082 in April 2025. He exempted $1,711,975 of the IRA and seeks by separate motion to spend exempted funds. If he withdraws funds from the IRA, the tax consequences are not clear. It appears his IRA withdrawals are taxable. In his plan the debtor asserts there will be "an offsetting dollar for dollar deduction on the Debtor's Federal and Nebraska income tax

---

[2] Both the U.S. Trustee and the debtor's sisters noted this fact. It is not clear why they have not moved for relief even if the debtor will not voluntarily consent. There does not appear to be a valid reason to further delay the appeal, which is fully briefed.

returns" for any withdrawals from the trust or his IRA. The basis of the offset is neither stated nor apparent.

As a defense to the motion to appoint a trustee, the debtor's attorney argues in his affidavit the motion to appoint is moot because the debtor proposed a fully funded plan:

> Considering that the Debtor has filed an Amended Plan (Filing 43) which provides for payment in full of the judgment creditor upon funding of his portion of the Joann Berkshire Trust, waiving the exempt amount of his IRA to pay for judgment creditor until the trust is funded with limitations upon the amount of his withdrawals, the Motion to Appoint a Trustee is clearly moot.

During the hearing, the debtor focused on the lack of funding of the trust established by his mother. He blames his sisters for not funding it. But his sisters are not the trustees. Bank of America is.

## Conclusions of Law

The Bankruptcy Code mandates the appointment of a Chapter 11 trustee if cause is established.

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case.

11 U.S.C. § 1104(a)(1). In addition, a trustee may also be appointed under 11 U.S.C. § 1104(a)(2) "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate[.]"

"The appointment of a trustee in a Chapter 11 case is an extraordinary remedy." *In re Keeley & Grabanski Land P'ship*, 455 B.R. 153, 162 (B.A.P. 8th Cir. 2011). "[T]here is a strong presumption in favor of allowing a chapter 11 debtor-in-possession to remain in possession." *Id*. As the party moving for relief, the burden of proof is on the U.S. Trustee. The burden of proof in the Eighth Circuit is preponderance of the evidence. *Id*. at 163 ("the proper standard for a party seeking the appointment of a Chapter 11 trustee is preponderance of the evidence.").

The debtor asserts the standard of proof is clear and convincing evidence. In adopting preponderance of the evidence, the Bankruptcy Appellate Panel in *In re Keeley* noted a circuit split regarding the degree of the burden. It noted the

preponderance standard applies to discharge actions, which can have a greater negative effect on a debtor:

> If a preponderance of the evidence standard is a sufficient standard for the denial of discharge based on a debtor's fraud, it should likewise be sufficient for the appointment of a trustee based on allegations of the debtor's fraud or misconduct.

*Id*. at 163.

Preclusion is also an issue. Two state courts found the debtor breached multiple fiduciary duties. These judgments may have preclusive effect on the issue of cause under 11 U.S.C. § 1104. *See Phoenix Heliparts Inc.*, No. 2:15-BK-12003-DPC, 2015 WL 14080554, at *2 (Bankr. D. Ariz. Oct. 19, 2015) ("The Court is precluded from re-litigating claims of the Debtor's gross mismanagement or dishonesty under § 1104 [under] issue preclusion"). The U.S. Trustee largely relies upon the state court judgments to establish mismanagement and dishonesty in this case.

The bankruptcy court must look to state law to determine the preclusive effect of a judgment. *Jacobus v. Binns (In re Binns)*, 328 B.R. 126, 129 (8th Cir. B.A.P. 2005). The applicability of preclusion is a question of law. *See McGill v. Lion Place Condo. Ass'n*, 864 N.W.2d 642, 650 (Neb. 2015). Under Nebraska law, issue preclusion applies when:

> (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action.

*Hara v. Reichert*, 843 N.W.2d 812, 816 (Neb. 2014). The party asserting preclusion has the burden of proving its elements. *Johnson v. Miera (In re Miera)*, 926 F.2d 741, 743 (8th Cir. 1991). Both prior actions determined the issue of the debtor's breach of various fiduciary duties, which breaches rise to gross mismanagement and dishonesty. The issues regarding cause are identical. The actions were fully litigated. The only remaining element is finality of the judgments.

There is a question as to finality regarding the county court judgment. It was entered post-petition without relief from the automatic stay. There is a circuit split as to whether a judgment entered in violation of the automatic stay is void or voidable.[3] *See* 18 Moore's Federal Practice - Civil § 130.04 (2025). The majority hold such a judgment is void. *Id*. A void judgment cannot have preclusive effect. The

---

[3] Not giving the county court judgment preclusive effect also avoids the issue of whether the automatic stay prevented the county court from removing the debtor as trustee. The plaintiff in the county court action has not yet requested retroactive relief from stay.

Eighth Circuit Court of Appeals has not weighed in on the matter, but the Eighth Circuit BAP aligns with the majority. *See In re Vierkant*, 240 B.R. 317, 320 (B.A.P. 8th Cir. 1999) (finding reversable error in giving a judgment entered in violation of the automatic stay preclusive effect).[4] The county court judgment will not be given preclusive effect in ruling on the U.S. Trustee's motion.

The district court judgment, on the other hand, is a valid final judgment and is entitled to preclusive effect. The debtor notes he is appealing the judgment. But the appeal does not prevent the application of issue preclusion. *See Huron Holding Corporation v. Lincoln Mine Operating Co.*, 312 U.S. 183 (1941) ("[I]n the federal courts the general rule has long been recognized that while appeal with proper supersedeas stays execution of the judgment, it does not—until and unless reversed—detract from its decisiveness and finality."). The court will consider the findings of the district court in determining whether to appoint a trustee.

In determining whether cause exists for the appointment of a trustee under § 1104, the court should consider:

> the materiality of any misconduct, the debtor-in-possession's evenhandedness or lack thereof in dealings with insiders and affiliated entities in relation to other creditors, the existence of pre-petition voidable preferences or fraudulent conveyances, whether any conflicts of interest on the part of the debtor-in-possession are interfering with its ability to fulfill its fiduciary duties, and whether there has been self-dealing or squandering of estate assets.

*In Matter of Sears*, No. BK10-40275, 2016 WL 1178383, at *2–3 (Bankr. D. Neb. Mar. 24, 2016) (citing *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3rd Cir. 1989)) (citations omitted).

The preclusive findings of the district court mandate the appointment of a Chapter 11 trustee in this case.[5] As in the district court case, a debtor in possession owes fiduciary duties to the estate and its creditors. *See In re Schuster*, 132 B.R. 604, 609 (Bankr. D. Minn. 1991). As detailed in the findings of fact, the debtor did not fulfill fiduciary duties before the commencement of this case. The misconduct was material. The debtor did not act even-handedly. His self-dealing was material. He

---

[4] *But see In re Williams*, 257 B.R. 297 (Bankr. W.D. Mo. 2001) (refusing to recognize the precedential value of *Vierkant* stating in a footnote, "While the rulings of the Bankruptcy Appellate Panels are entitled to appropriate respect, those rulings are not binding on the Bankruptcy Court.").

[5] The findings of the district court were based upon a preponderance of the evidence standard, which matches the burden established by the Bankruptcy Appellate Panel to establish cause under Section 1104.

squandered partnership assets. The debtor's family fight is personal and affecting his judgment.

Even if the debtor is correct the burden of proof to appoint a Chapter 11 trustee is clear and convincing evidence, the U.S. Trustee met the burden when we consider the debtor's postpetition conduct along with his prepetition conduct. In the short time acting as a debtor in possession, the debtor did not accurately and fully account for estate assets or expenses. He comingled funds. He made unauthorized payments and payments outside the ordinary course of business. He asserts full compliance with his duties and the bankruptcy code is irrelevant because his IRA and yet-to-be funded trust contain sufficient assets. But the trust is not funded, and the amount, if any, to which the debtor is entitled is far from certain. It is not clear the IRA is sufficient to pay the judgment, plus potential post-petition interest, and income taxes on the distributions. The debtor's IRA assets, which he plans to use to satisfy the judgment, are imprudently invested in one company's stock. Stock is subject to market fluctuations or significant downturns and is inappropriate for purposes of this bankruptcy case.[6]

IT IS THEREFORE ORDERED, the U.S. Trustee's motion to appoint a Chapter 11 trustee (Doc. #25) is GRANTED.

Dated: July 7, 2025

BY THE COURT

/s/ Brian S. Kruse
Brian S. Kruse
Bankruptcy judge

---

[6] Ultimately, while the court accepts the debtor seeks to prevent an execution of his home, it appears a major purpose of this bankruptcy is to coerce his sisters to fund a trust they do not directly control.