IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Case No. BK25-80366 |
| | ) | |
| RICHARD N. BERKSHIRE, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| | ) | |

**Order Requiring Disgorgement of Attorney Fees**

THIS MATTER is before the court on the motion filed by the U.S. Trustee to examine the attorney's fees of the debtor's counsel, James Bachman. Amy Blackburn appeared for the U.S. Trustee. Mr. Bachman appeared for himself. The matter was submitted on affidavit and documentary evidence.[1]

The motion is granted in part. Mr. Bachman must disgorge all post-petition fees he was paid, along with any pre-petition retainers. The post-petition fees were not authorized or approved. Also, the amount the debtor paid Mr. Bachman exceeds the reasonable value of the services. Mr. Bachman must also account to the U.S. Trustee, the Chapter 7 trustee, and the court as stated in this order.

**Findings of Fact**

The debtor, Richard Berkshire, filed his Chapter 11 bankruptcy case on April 18, 2025. The bankruptcy case was precipitated by two pieces of litigation. Approximately one year before the filing, the debtor's sisters obtained a $2,666,767.74 judgment against the debtor on account of multiple and repeated breaches of fiduciary duties the debtor owed a partnership. Approximately two months before the filing, the debtor defended litigation in state probate court regarding alleged breaches of fiduciary duties owed to his sisters and his mother regarding a trust.

The debtor retained Mr. Bachman to represent him in the Chapter 11 bankruptcy case. After filing the bankruptcy, Mr. Bachman filed an application seeking his own

---

[1] Both parties were offered an evidentiary hearing with live witness testimony. Both declined the invitation, requesting the matter be resolved on affidavit and documentary evidence.

The following evidence is received: Doc. #1, Doc. #10, Doc. #12, Doc. #17, Doc. #21, Doc. #31, Doc. #39, Doc. #43, Doc. #53, Doc. #84, Doc. #151, Doc. #179, Doc. #210, Doc. #212, Doc. #217, Doc. #279, Doc. #279-3, Doc. #279-4, Doc. #279-5, Doc. #296 through #313, Doc. #359, Doc. #376 ¶ 35-36, Doc. #376-3, -4, -5, -6, -7, Doc. #463, Doc. #483 (Lauren Goodman's testimony), Doc. #508, and Doc. #526.

employment. In the application Mr. Bachman represented he had "no connection with any of the creditors of the Debtor". Mr. Bachman's employment was approved.

Mr. Bachman represented the bankruptcy estate for only 80 days. On July 7, 2025, the debtor was removed as a debtor in possession for cause. A Chapter 11 trustee was appointed. Cause for removal included the multiple breaches of fiduciary duty with respect to the partnership, and the debtor's inappropriate conduct in the bankruptcy case. Because the case was a liquidation case with no ability to reorganize, the case was converted to a Chapter 7 case on February 6, 2026, and the Chapter 11 trustee was appointed Chapter 7 trustee.

As attorney for the debtor and bankruptcy estate, Mr. Bachman had to disclose certain compensation he received before the bankruptcy was filed. The disclosure mechanism is Bankruptcy Form 2030 - Disclosure of Compensation of Attorney for Debtor. In part, the form requires the attorney state compensation received "in contemplation of or in connection with the bankruptcy case" within one year of filing the bankruptcy case. Mr. Bachman did not file Form B2030. He did not disclose any compensation. The debtor, however, disclosed one payment to Mr. Bachman on his Statement of Financial Affairs ("SOFA"). In response to the question, "Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?" The debtor disclosed a $7,500 payment to Mr. Bachman paid on March 1, 2025. The description of the payment on the SOFA is "Cash – attorney retainer".

The U.S. Trustee reviewed bank statements the debtor produced in the bankruptcy case. The bank statements showed additional payments the debtor paid Mr. Bachman. Between December 2024 through August 2025, the debtor paid Mr. Bachman $79,500 through eight separate checks. Pre-petition payments to Mr. Bachman totaled $63,500. One of the pre-petition payments, check 5226, is in the amount of $7,500. The memo line of the check states "Bankrupt Fees". The check cleared the debtor's bank account on April 1, 2025.[2]

The remaining pre-petition payments to Mr. Bachman total $56,000. They were not disclosed on the SOFA. Regarding the non-disclosure, Mr. Bachman asserts the debtor retained him in 2024 as an expert witness and "consultant" in the probate litigation. The payments began in December 2024 and concluded in February 2025,

---

[2] Check 5226 does not appear to be the March 1, 2025 "Cash – attorney retainer". Check 5226 is not a "Cash" payment. And the debtor's bank statements evidence significant cash withdrawals. If we assume check 5226 was the March 1 payment, it took one month to clear the debtor's bank account. The delay is not characteristic of any other payment to Mr. Bachman. Of the eight checks to Mr. Bachman, five cleared the debtor's bank account within one day, one cleared within two days, and one cleared within four days.

when the probate case was being tried.[3] The U.S. Trustee requested Mr. Bachman's billing statements regarding the probate matter. Mr. Bachman initially refused to produce them. After an initial hearing, he produced what he calls "a copy of my billing statement which was taken from my billing statements I sent to my client." The billing statement details $64,785 in charges from December 3, 2024, through March 21, 2025.

The veracity of the billing statement was questioned in an affidavit filed by counsel for the debtor's sisters who tried the probate case. Mr. Bachman billed the debtor monthly at the end of each month. Yet the billing statement Mr. Bachman submitted to the court is dated February 9, 2026. The billing statement includes line items for four days attending trial. Likewise, in an affidavit dated January 7, 2026, Mr. Bachman asserts he spent a "great deal of time" on the probate litigation, "including attending a trial for four days." But according to the probate court records, the trial lasted only two days. Also, the billing entries on the statement appear to be attorney services, not the services of an expert witness or "consultant." Finally, the debtor's check payments do not match the amounts Mr. Bachman purportedly invoiced the debtor for the prior month.

Mr. Bachman filed a supplemental affidavit responding to the issues raised by counsel for the debtor's sisters. He explained the billing statement was not completely based on or taken from Mr. Bachman's actual billing statements to the debtor. Mr. Bachman changed his billing system in January 2026. His computer crashed on January 15, 2026. His new system did not have an automatic backup. His January 2025 invoice to the debtor was lost.[4] Mr. Bachman "reconstructed" the billing entries on the billing statement for January 2, 20, 22, and 24, 2025 from "handwritten notes". The other January entries were "from memory". Mr. Bachman "was able to calculate the amount of time by determining the difference between the total amount billed and the other monthly totals."[5] The amounts the debtor paid each month differed from Mr. Bachman's actual invoices because the debtor paid in advance for "additional work".

---

[3] The payments included Check 5206, dated December 9, 2024, for $6,000, Check 5207 dated January 6, 2025, for $5,000, Check 5209 dated January 10, 2025, for $15,000, Check 5216 for $10,000 dated February 14, 2025, and Check 5219 dated February 27, for $20,000.

[4] Mr. Bachman has not produced actual copies of the other monthly invoices which were not lost.

[5] Mr. Bachman's supplemental affidavit does not explain why, on January 7, 2026, before his computer crashed, and while he had access to his actual January billing statement and records, he declared under penalty of perjury he *attended* trial for four days.

Post-petition the debtor paid Mr. Bachman at least $15,500.[6] At no time did Mr. Bachman seek bankruptcy court approval for a post-petition payment from the bankruptcy estate. Mr. Bachman defends all pre-petition and post-petition payments contending the source of the payments were withdrawals from the debtor's IRA, which IRA was scheduled as exempt under 11 U.S.C. § 522(b)(3)(C). Except for a post-petition deposit of $107,634 from an unknown source, and $23,300 deposit from Cabo Golf Vacations, both deposited immediately after the debtor's bankruptcy was filed, payments to Mr. Bachman largely can be traced to withdrawals from the debtor's IRA.[7]

In addition to the disclosure issues, the U.S. Trustee challenges the reasonableness of Mr. Bachman's fees. During his representation of the debtor, Mr. Bachman filed inaccurate bankruptcy schedules, omitting both significant assets and liabilities. Mr. Bachman did not properly disclose payments he received. He filed Chapter 11 plans for the debtor which were clearly not acceptable or feasible. He assisted the debtor in stonewalling the U.S. Trustee, the Chapter 11 trustee, and the Chapter 7 trustee in their attempts to obtain information regarding the debtor's financial condition, and in liquidating the debtor's estate.[8]

## Conclusions of Law

The U.S. Trustee requests Mr. Bachman disgorge all attorneys' fees the debtor paid, contending the pre-petition fees were not disclosed, the post-petition fees were not approved, and all fees paid exceed the reasonable value of the services provided. Consideration of debtor's attorney fees is required by the Bankruptcy Code. "[C]ourts have broad and inherent authority to deny any and all compensation where an attorney fails to satisfy the requirements of the Code and Rules." *In re Sandpoint Cattle Co., LLC*, 556 B.R. 408, 420 (Bankr. D. Neb. 2016). Bankruptcy

---

[6] According to monthly operating reports filed by the debtor, the debtor paid Mr. Bachman another $7,500 on April 30, 2025, and paid "Jim Bachman Trust Account" $5,000 in May 2025. He paid Mr. Bachman $3,000 on August 26, 2025. It is not clear whether Mr. Bachman was paid more. He admits in his affidavit receiving $15,500. But he also states he was paid an undisclosed "remaining balance" in August 2025.

[7] Identified deposits from the debtor's IRA are electronic transfers from "U.S. Bank Trust ACH 19-LK02213". From his IRA the debtor withdrew $450,000 between January 2025 and March 2025. The deposits included $200,000 on January 9, 2025, $150,000 on February 18, 2025, and $100,000 on March 20, 2025. The $107,634 deposit occurred on April 21, 2025. The deposit is not a wire from U.S. Bank and is not in an even dollar amount. The deposit is incorrectly listed on the operating report as a "withdrawal" for "personal living expense," which leads to the conclusion the funds were withdrawn from another of the debtor's several other bank accounts.

[8] Further details regarding Mr. Bachman's representation of the debtor are contained in the court's orders at Doc. #28, Doc. #69, Doc. #141, Doc. #204, Doc. #378, and the U.S. Trustee's declarations at Doc. #53 and Doc. #312.

courts have "broad power and discretion … and, indeed, a duty to examine [fees] for reasonableness." *Tri-State Fin., LLC v. Lovald*, 525 F.3d 649, 655 (8th Cir. 2008). The pre-petition fees and post-petition fees require slightly different analyses.

*Post-Petition Payments*

The debtor paid Mr. Bachman post-petition compensation totaling at least $15,500. The standards and procedures for compensation paid to attorneys for the bankruptcy estate are established under 11 U.S.C. §§ 329 and 330, Bankruptcy Rule 2016, and Local Rule 2016-1. Under § 330 an attorney may be awarded reasonable compensation for "actual, necessary services".

Mr. Bachman's fees were not approved under § 330. In his defense, Mr. Bachman asserts he was not paid from estate assets. He was paid from funds the debtor withdrew from the debtor's exempt IRA. But the evidence supports, in addition to the IRA withdrawals, the debtor's estate included non-exempt, non-IRA funds when Mr. Bachman was paid.[9] Moreover, the IRA withdrawals were not exempt. The withdrawals were property of the debtor's bankruptcy estate.

When a debtor files a bankruptcy an estate is created. As a general matter, the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case". 11 U.S.C. § 541. Under federal law certain retirement assets are exempt and do not become property of the estate. An individual debtor may exempt:

> retirement funds to the extent that those funds are *in a fund or account that is exempt from taxation* under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.

11 U.S.C. § 522(b)(3)(C) (emphasis added). Also, in a Chapter 11 case where the debtor is an individual, property of the estate includes "all property of the kind specified in section 541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted." 11 U.S.C. § 1115.[10]

---

[9] Even if the $107,634 deposit or the IRA withdrawals are not property of the Chapter 7 estate, disgorgement to the debtor is not appropriate because of the debtor's conduct in this case. Disgorgement to the Chapter 7 trustee is therefore also ordered under 11 U.S.C. § 105 because this relief is not inconsistent with the Bankruptcy Code or § 329, which provides the court "may" order excessive payments repaid to the person making the payment.

[10] Mr. Bachman argued during various hearings the IRA exemption continues in withdrawn funds. He supported his argument with examples of exemptions he asserts continue in proceeds under *state* law. Some state law exemptions do continue in proceeds. But the debtor did not claim an exemption under state law. He claimed his IRA exemption under federal law only, likely because the Nebraska exemption for retirement benefits is allowed only "to the

When the debtor withdrew the IRA funds, the withdrawn funds were no longer *in a fund or account* exempt from taxation. The funds were in the debtor's regular checking account subject to taxation.[11] And because the debtor's case was a Chapter 11 case at the time the distributions occurred, the distributions became property of the debtor's estate under § 1115.

Because the debtor paid the fees with funds from the bankruptcy estate, and Mr. Bachman accepted them without court approval, Mr. Bachman must fully disgorge the post-petition payments. "Absent compliance with the Bankruptcy Code and Federal Rules of Bankruptcy Procedure, an attorney has no absolute right to an award of compensation." *Sandpoint Cattle Co., LLC*, 556 B.R. at 418. Disgorgement is the appropriate remedy when an attorney does not comply with statutes and rules regarding compensation. "Where a professional fails to file an application for allowance of compensation prior to payment, a court has discretion to order disgorgement." *Jackson v. GSO Bus. Mgmt., LLC (In re Jackson)*, 643 B.R. 664, 696 (Bankr. D. Conn. 2022) (citing *Miller v. Simpson*, 325 Fed. Appx. 25, 27 (2d Cir. 2009)); *see also Morris v. King (In re Rosales)*, 621 B.R. 903, 929–30 (Bankr. D. Kan. 2020); *In re Dale's Crane, Inc.*, 1999 WL 34754119, at *7 (Bankr. D. Idaho Jan. 16, 1999) (requiring disgorgement where professionals accepted compensation "directly from the Debtor without disclosing such payments and without Court approval."). The failure to seek approval of fees is such a "serious violation," disgorgement is the appropriate remedy even if the attorney performed "meritorious work." *In re Brown*, 371 B.R. 486, 500–01 (Bankr. N.D. Okla. 2007).

Disgorgement is also appropriate in this case under 11 U.S.C. § 329 because the fees the debtor paid Mr. Bachman exceed the reasonable value of the services Mr. Bachman provided the estate. Mr. Bachman is only entitled to compensation from the estate while the debtor was a debtor in possession. Once a Chapter 11 debtor is no longer a debtor in possession, the debtor's attorney is no longer employed by the case trustee under 11 U.S.C. §§ 327 and 1107. Thereafter, the debtor's attorney cannot be compensated from estate funds. *See Lamie v. United States Trustee*, 540 U.S. 526 (2004). Mr. Bachman was employed for 80 days, from the petition date, April 18, 2025, through the appointment of the Chapter 11 trustee, July 7, 2025. As more clearly stated in the court's prior orders, during the 80 days the debtor was a debtor in possession, Mr. Bachman assisted the debtor in making incomplete and inaccurate filings, assisted the debtor in filing a clearly unconfirmable and wholly

---

extent reasonably necessary for the support of the debtor and any dependent of the debtor." Neb. Rev. Stat. § 25-1563.01. Mr. Bachman's reliance on state law exemptions ignores the plain text of the federal exemption statute.

[11] There is a statutory exception. A rollover distribution subsequently deposited in an eligible rollover fund or account within 60 days after the distribution does not lose its exempt status. *See* 11 U.S.C. § 522(b)(4)(D). The exception does not apply. The debtor's withdrawals were paid to Mr. Bachman. They were not rolled over.

self-serving Chapter 11 plan, stonewalled the U.S. Trustee, and was legal counsel while the debtor dissipated the bankruptcy estate. Moreover, the bankruptcy was ill-conceived given the debtor's breach of fiduciary duties, which necessitated the appointment of a Chapter 11 trustee. Mr. Bachman's conduct cost the estate more than any value he provided. For these reasons, full disgorgement rather than partial disgorgement is appropriate even if, as he contends, Mr. Bachman provided *some* services which benefited the bankruptcy estate. The damage to the estate exceeds any benefit.

Because the fees were not approved and were excessive, Mr. Bachman must disgorge all post-petition payments. The disgorgement includes the admitted payments of $15,500, plus the $7,500 "cash" retainer listed on the SOFA, plus the $7,500 payment by check 5226.

*Pre-Petition Payments*

As with post-petition payments, a bankruptcy court must review certain pre-petition transactions between a debtor and bankruptcy counsel. Also, like post-petition fees, pre-petition fees can be disgorged if not properly disclosed or if unreasonable. Disclosure of pre-petition fees is governed by 11 U.S.C. § 329 and Federal Rule of Bankruptcy Procedure 2016. Under Bankruptcy Rule 2016, "every debtor's attorney" must file a disclosure statement under § 329 "within 14 days after the order for relief". Fed. R. Bankr. P. 2016(b)(1). Bankruptcy Form B2030 facilitates the required disclosure. Section 329 applies to fees "in contemplation of or in connection with" the bankruptcy case:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, *for services rendered or to be rendered in contemplation of or in connection with the case by such attorney*, and the source of such compensation.

11 U.S.C. § 329(a) (emphasis added). Even if payments were properly disclosed, disgorgement is necessary if the "compensation exceeds the reasonable value of any such services". *Id.* § 329(b). Disgorgement is to the bankruptcy estate if the payment "would have been property of the estate". *Id.* § 329(b)(1). The first step is to determine whether services were "in contemplation of" or "in connection with" the debtor's bankruptcy case.

At least one pre-petition payment is clearly in connection with the bankruptcy case. Services are "in connection with" the bankruptcy case if, objectively, the services are "inextricably intertwined with the bankruptcy" or "are crucial to the debtors' efforts

to reorganize." *In re Learson*, 638 B.R. 341, 357 (Bankr. E.D. La. 2022). That is, the services must have an "impact on the bankruptcy case," *In re Grabanski*, 578 B.R. 458, 476 (Bankr. D.N.D. 2017) (quoting *In re Frye*, 570 B.R. 21, 29 (Bankr. D. Vt. 2017)). Check 5226 for $7,500 is clearly and objectively in connection with the debtor's bankruptcy case. The memo line of the check states the payment is for "Bankrupt Fees". This payment is subject to § 329 and was ordered disgorged as unreasonable in the previous section.

The court also is authorized and has a duty under § 329 to review services performed "in contemplation of" the bankruptcy. Unlike the objective standard applied to services "in connection with" the bankruptcy, whether services are "in contemplation of" bankruptcy is a subjective standard. "In contemplation of" services are services "influenced by, and a direct result of, the imminence of the Debtor's filing." *Brown v. Luker (In re Zepecki)*, 258 B.R. 719, 724 (B.A.P. 8th Cir. 2001) (citations omitted). "More than a casual relationship" is required. *Id*. The test is subjective "looking to whether the debtor was influenced by the possibility or imminence of a bankruptcy proceeding in making the transfer". *Id*.

Regarding the remaining $56,000 in known pre-petition payments, Mr. Bachman asserts the payments were in connection with probate litigation between the debtor and the debtor's sisters. Mr. Bachman asserts the debtor retained him as an "expert witness and "consultant" in the case. The probate court records establish Mr. Bachman was not trial counsel. But the records also evidence Mr. Bachman testified during a probate trial around the time the payments were made. The probate matter is not objectively "in connection with" the bankruptcy case. Therefore, the matter turns on the subjective test - "whether the debtor was influenced by the possibility or imminence of a bankruptcy proceeding in making the transfer." This determination is difficult, if not impossible, given the lack of live witness testimony and the lack of any evidence elicited from the debtor. Complicating matters, Mr. Bachman's billing statement contains information he admittedly fabricated.[12]

---

[12] Mr. Bachman asserts the total amount billed in the billing statement is accurate even if the descriptions are not. Assuming the debtor owed Mr. Bachman $64,785 as stated in the billing statement, the debtor only paid Mr. Bachman $56,000 for probate services. This appears to make Mr. Bachman a pre-petition creditor of the debtor, with an interest adverse to the debtor's bankruptcy estate under 11 U.S.C. § 101(14), precluding his employment as attorney for the bankruptcy estate under 11 U.S.C. § 327, and making the statement in his application for employment false. Ironically, after the Chapter 11 trustee was appointed Chapter 7 trustee, Mr. Bachman requested the court disqualify the Chapter 7 trustee and her law firm, incorrectly asserting they were not disinterested because the firm was a creditor. The firm was not a creditor; it held a Chapter 11 administrative expense claim as counsel for the Chapter 11 trustee. (Doc. #478; Doc. #480). The motion to remove was one example of several unsupportable motions Mr. Bachman has filed as counsel for the debtor, unnecessarily raising the cost of administration.

Given the suspect record, the pertinent question is who bears the burden of proof on the issue of whether services are "in contemplation of" bankruptcy. It is clear a professional must prove entitlement to compensation from the bankruptcy estate, including whether the professional's attorney fees are reasonable. *See Chamberlain v. Kula (In re Kula)*, 213 B.R. 729, 736 (B.A.P. 8th Cir. 1997). But the $56,000 in payments were not paid by the bankruptcy estate. They were paid by the debtor before the bankruptcy case was filed. The bankruptcy court for the Southern District of Ohio recently faced this "antecedent question" regarding the burden of proof. The court held:

> The parties have not cited, and the Court has been unable to locate, any cases assigning the burden of proof on the antecedent question presented here of whether § 329 applies at all…. [T]he general rule is that the party seeking to alter the status quo bears the burden of proof. Therefore the Court concludes that the U.S. Trustee here has the burden of showing that § 329(b) and Bankruptcy Rule 2017 apply. If the U.S. Trustee carries that burden, [counsel] bears the burden of showing that its fees were reasonable.

*In re Huff*, 2025 WL 3286052, at *4 (Bankr. S.D. Ohio Nov. 25, 2025) (citations omitted). The reasoning is sound. Section 329 does not contain a presumption or assign a burden. And a debtor's counsel should not have to prove a negative – the pre-petition payments were not in connection with or in contemplation of the bankruptcy. At a minimum the U.S. Trustee must make some prima facie showing the pre-petition fees fall under § 329.

The U.S. Trustee did not establish the prima facie case. Live witness testimony from the debtor and Mr. Bachman may have helped, but it is not certain. While the billing statement is not accurate, the litigation in probate court occurred. Mr. Bachman attended the trial and testified as a witness. The debtor had no reason to pay Mr. Bachman to shield assets. The funds used were initially housed in an exempt IRA.

Because the U.S. Trustee did not make a prima facie case the $56,000 in payments were in contemplation of bankruptcy under § 329, the issues of disclosure and reasonableness under § 329 do not arise.[13] It follows the request to disgorge the $56,000 must be denied. The denial is without prejudice to other potential relief.[14]

---

[13] Debtors and their counsel have a duty to cooperate with the U.S. Trustee. Failure to cooperate or comply with discovery obligations can, under appropriate circumstances, result in adverse inferences under Fed. R. Civ. P. 37(b)(2), including the presumption pre-petition payments were in connection with or in contemplation of bankruptcy.

[14] Depending on the case, other relief might include an adversary proceeding seeking to avoid fraudulent transfers, a disciplinary complaint against debtor's counsel, or an objection to the debtor's discharge.

IT IS THEREFORE ORDERED:

1. James Bachman must disgorge the $7,500 cash-retainer payment, the $7,500 from check 5226, and the $15,500 the debtor paid post-petition, for a total of $30,500 to Lauren Goodman, Chapter 7 trustee. A separate judgment for this amount will be entered.

2. James Bachman must disgorge any other attorney fee payment he received while the case was a Chapter 11 case (April 18, 2025, through February 6, 2026) to Lauren Goodman, the Chapter 7 trustee. Within 30 days of the date of this order, Mr. Bachman must account to the U.S. Trustee and the Chapter 7 trustee for any other payments he received during the subject time. The U.S. Trustee or the Chapter 7 trustee may conduct a Rule 2004 examination regarding the payments without further order. The examination does not include probing information protected by the attorney-client privilege.

       Dated: March 4, 2026

                                         BY THE COURT:

                                         /s/ Brian S. Kruse
                                         Brian S. Kruse
                                         Chief Bankruptcy Judge