IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Case No. BK25-80366 |
| | ) | |
| RICHARD N. BERKSHIRE, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | ) | |

**Opinion Approving Motion to Sell Property**

THIS MATTER came before the court for hearing on March 9, 2026, on the motions filed by the Chapter 7 trustee to sell real estate located in Omaha, Nebraska, free and clear of liens (Doc. #438) and to surcharge the property (Doc. #489). James Bachman appeared for and with the debtor. Michael Eversden appeared for and with the Chapter 7 trustee, Lauren Goodman. Craig Knickrehm appeared for Equity Bank, successor by merger with Frontier Bank. Eric Knutson appeared for Berkshire Partnership, LP. Amy Blackburn appeared for the U.S. Trustee. Victor Kirkland appeared, *pro se*.

The sale is approved. The sale is in the best interest of the debtor's bankruptcy estate and all requirements of 11 U.S.C. § 363 are met. The motion to surcharge is granted in part.

**Findings of Fact**

The debtor filed his bankruptcy petition on April 18, 2025, after a $2,666,767.74 judgment for breach of fiduciary duties was entered against him and in favor of Berkshire Partnership. During the hearing the debtor requested the court take judicial notice he appealed Berkshire Partnership's judgment to the Nebraska Supreme Court. The appeal is pending. No party objected to the court considering this information. Throughout his bankruptcy, the debtor contended Berkshire Partnership's judgment is not only a disputed claim, but he believes it is likely to be reversed on appeal.

As a result of the debtor's pre-petition and post-petition conduct, the debtor was removed as a debtor in possession. Lauren Goodman was appointed Chapter 11 Trustee on July 10, 2025. Because the case was a liquidation case, the debtor's case was converted to a Chapter 7 case on February 6, 2026. Ms. Goodman was appointed Chapter 7 Trustee.

The bankruptcy estate includes a house in Omaha, Nebraska. The house, though titled in the debtor, was under construction for personal reasons – for use by the debtor's son. The construction was not completed when the debtor filed his bankruptcy case. The trustee was authorized to employ a real estate agent who listed the property for sale. According to the agent, social media postings generated 4,448 views. She received three offers. The trustee accepted the offer of Pat Alexander and Rick Holmes, who agreed to purchase the property for $1.1 million.

The debtor did not own the property free and clear. The property is subject to a mortgage in favor of Equity Bank, the judgment lien of Berkshire Partnership, and several construction liens. The combined liens exceed the value of the property.

The construction lien claimants filed their liens post-petition at the urging of the debtor, and without court approval. After the debtor filed his bankruptcy case he continued construction, employing contractors on credit. But the debtor, who is not in the business of constructing homes, did not obtain court approval to obtain credit, incur secured debt, or incur unsecured debt. The debtor assisted several of the lienholders in filing their liens after he was removed as a debtor in possession, including a $456,240 lien filed by the debtor's son, a $4,800 lien filed by Home Pride Contractors, a $32,250 lien filed by Mike Peters, a $40,360 lien filed by Monte LaFleur, and a $40,175 lien by Victor Kirkland.

Not all parties consent to the sale and surcharge. Equity Bank consented. Berkshire Partnership takes no position but did not object. The U.S. Trustee supported both motions. The debtor objected, but the court previously found the debtor had no pecuniary interest in the bankruptcy case, and therefore no standing to object to the motions.[1] The debtor's son Andrew did not object.[2]

Three construction lien holders objected, filing three separate but identical objections. It appears from the formatting and content, the debtor or his counsel had a hand in drafting the objections.[3] The three lienholders assert the property is

---

[1] The orders denying standing cite *Nangle v. Surratt-States (In re Nangle)*, 288 B.R. 213, 216 (B.A.P. 8th Cir. 2003) and *In re Adams*, 424 B.R. 434, 437 (Bankr. N.D. Ill. 2010).

[2] Andrew Berkshire did not object because he agreed not to object as part of a compromise he reached with the Chapter 7 trustee. The trustee filed an action seeking sanctions against the debtor and Andrew Berkshire for willful contempt of this court's orders and for violations of the automatic stay. It is not clear how the debtor became indebted to Andrew Berkshire in the amount of $456,240. Andrew Berkshire is not listed as a pre-petition creditor in the debtor's schedules. And the debtor testified at the sanction hearing all contractors ceased work after the debtor was removed as a debtor in possession. $456,240 is a significant amount considering the debtor was a debtor in possession for approximately 80 days.

[3] Throughout the case, the debtor consistently shirked his duties under the Bankruptcy Code. Even if the debtor and his counsel had a hand in the objections, the construction lien

undervalued, the sale procedures were not proper, and the sale will invalidate their security interests. Of the three lienholders, only Mr. Kirkland appeared and offered evidence in support of his objection.

Mr. Kirkland requests the debtor be allowed to purchase the property. The debtor offered to pay $1,000,000, including $60,000 to the bankruptcy estate. He asserts Equity Bank agreed to fund the purchase. But Equity Bank states it does not support the debtor's offer. The bank did not agree to lend and does not want to continue to lend to the debtor. It "wants out." Also, it does not appear the debtor intended to close a transaction for $1,000,000. Instead, he wants to pay $60,000 to the trustee and to "remain liable" for approximately $940,000, including the debts owed to Equity Bank and the construction lien claimants. He does not seek to pay anything to Berkshire Partnership on account of its judgment lien. The offer appears designed to avoid paying his judgment creditor.

The motion to sell identified no benefit to the bankruptcy estate. At the 11th hour the Chapter 7 trustee filed a stipulation with Equity Bank. The bank agreed $10,000 of sale proceeds subject to the bank's lien will be carved out. Under the stipulation:

> The Carve-Out Amount shall be separate and apart from any surcharge that the Court may approve with respect to the Trustee's sale of the Property. It shall come into the estate and be distributed in accordance with the priorities in the Bankruptcy Code.

In addition to the sale, the trustee seeks to surcharge the property under 11 U.S.C. § 506 to reimburse the estate for administrative expenses paid or incurred by the estate to preserve, protect, and sell the collateral. The total amount the trustee requests is $9,228.89, including attorney fees of $5,705. The attorney fee invoice appears to include a charge related to a motion for turnover of client files, which charge totals $724.50. Although not listed in the surcharge motion, in her motion to sell, the trustee seeks to pay the real estate commission and certain closing costs directly from the sale proceeds.

## Conclusions of Law

The trustee seeks to sell the property free and clear of liens. The Bankruptcy Code authorizes the sale under multiple circumstances including with the consent of every "interest in such property of an entity other than the estate." 11 U.S.C. § 363(f)(2). Equity Bank consented to the sale. Berkshire Partnership appeared at the hearing and did not take a position in favor of or against the motion. The trustee argues Berkshire Partnership received notice of the sale and terms, and the lack of

---

holders may have been harmed by the debtor's actions. Their objections are entitled to and will be given due and full consideration.

objection constitutes implied consent. Several bankruptcy courts have so held. *See, e.g., In re James*, 203 B.R. 449, 453 (Bankr. W.D. Mo. 1997) ("By failing to object to the sale, Roosevelt Bank implicitly conveyed its consent to the sale for purposes of satisfying section 363(f)(2).").

Consent is not the only ground under § 363(f). Even without universal consent, the sale can occur if the non-consenting entity's "interest is in *bona fide dispute*." 11 U.S.C. § 363(f)(4) (emphasis added). Whether a bona fide dispute exists is an objective determination and does not require an existing lawsuit.

> The term "bona fide dispute" is not defined in 11 U.S.C. § 363(f)(4). However, many courts, including the Seventh Circuit Court of Appeals, have stated that courts must determine "whether there is an objective basis for either a factual or legal dispute as to the validity of the debt." Clearly this standard does not require the court to resolve the underlying dispute, just to determine its existence. Courts utilizing this definition have held the parties to an evidentiary standard and evidence must be provided to show factual grounds that there is an "objective basis" for the dispute.
>
> Moreover, courts have recognized that to qualify as a "bona fide dispute" under § 363(f)(4), the propriety of the lien does not have to be the subject of an immediate or concurrent adversary proceeding.
>
> Thus, although the trustee did not file an adversary proceeding seeking to avoid the liens in question, he may nevertheless sell free and clear of the bank's liens if he can show, pursuant to 11 U.S.C. § 544, an objective basis for avoiding the liens, and thus establish a bona fide dispute for purposes of 11 U.S.C. § 363(f)(4).

*Union Planters Bank, N.A. v. Burns (In re Gaylord Grain L.L.C.)*, 306 B.R. 624, 627–28 (B.A.P. 8th Cir. 2004) (cleaned up).

The interest of Berkshire Partnership is objectively subject to a bona fide dispute. Its interest is a judgment lien. The debtor appealed the judgment to the Nebraska Supreme Court. A decision has not been entered. Throughout the case the debtor vehemently and repeatedly contended the judgment is not valid and will be reversed. The debtor's own position puts the Berkshire Partnership lien in a bona fide dispute. Therefore, even if Berkshire Partnership's implied consent is insufficient under § 363(f)(2), the sale is independently authorized under § 363(f)(4).

The subcontractors' interests are also objectively subject to a bona fide dispute. The debtor was not authorized to incur debt to complete the construction. A debtor in possession who does not operate a business must obtain court approval before obtaining credit or incurring unsecured debt. All debtors, regardless of whether they

operate a business, must obtain bankruptcy court approval to incur secured debt. Under the Bankruptcy Code:

> (a) If the trustee is authorized to operate the business of the debtor under section 721, 1108, 1183, 1184, 1203, 1204, or 1304 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.
>
> (b) The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.
>
> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of [priority or secured] debt[.]

11 U.S.C. § 364.

The debtor admits he retained contractors to work on the property post-petition. The debtor is a lawyer. He is not in the business of building homes.[4] He required bankruptcy court approval to obtain unsecured credit or incur unsecured debt. The debtor did not seek bankruptcy court approval. Even if the debtor was in the business of constructing homes, he did not obtain approval to incur secured debt. Moreover, the filings of the construction liens violate the automatic stay of 11 U.S.C. § 362. The stay prohibits "any act to create, perfect, or enforce any lien against property of the estate." § 362(a)(4). The trustee has a cognizable claim the liens are void or at a minimum, voidable. *See Seaver v. New Buffalo Auto Sales (In re Hecker)*, 496 B.R. 541, 549 (B.A.P. 8th Cir. 2013).

Mr. Kirkland contends the sale should not be approved because it will not benefit the bankruptcy estate. In addition to the statutory requirements, a sale generally will not be approved if there is no benefit to the bankruptcy estate.

---

[4] The debtor and Mr. Kirkland assert the debtor is in the business of being a general contractor. The debtor may have been building the house without a general contractor, but he is not in the business of being a general contractor. If he was in such business, why did the debtor not disclose the business in his bankruptcy schedules? In his schedules the only business he disclosed was "Berkshire Law Office." His non-disclosure deprived parties the opportunity to object to his incurring debt in the ordinary course of his business, which 11 U.S.C. § 364 clearly contemplates. Otherwise, bankruptcy courts would have no need to "order otherwise". *Id.* § 364(a).

> There is no reason to approve a sale free and clear of liens unless the proceeds will fully compensate the secured lien holders and produce some equity for the benefit of the estate.

*In re Golf, L.L.C.*, 322 B.R. 874, 878 (Bankr. D. Neb. 2004). A benefit to the bankruptcy estate exists.[5] It benefits from the $10,000 carve-out. It also benefits from the surcharge of expenses in the reduced amount of $8,504.39, which would be borne as an administrative expense.

The sale procedure is acceptable and was an open process. No one objected to the trustee's application to employ the real estate agent who was expressly hired to list the property for sale. The agent is a licensed real estate agent for a licensed broker. The property was thoroughly marketed. Social media postings generated 4,448 views. The agent received three bids on the property, not including the debtor's "offer". The trustee accepted the best offer for the property. No legitimate upset bids were offered during the hearing.

Mr. Kirkland requests the court approve the debtor's "offer". The debtor's offer is nothing more than an attempt to circumvent the priorities of the Bankruptcy Code and evade the debtor's pre-petition judgment creditor. The debtor's $1 million "offer" is not an offer at all. The debtor seeks to pay $60,000 and to "remain liable" for all debt other than the judgment lien in favor of Berkshire Partnership. Equity Bank wants none of it. In effect, the debtor obtained secured debt without court approval and now seeks to use the unauthorized secured debt as leverage to evade the lien of his judgment creditor. A sale by the trustee best protects the priorities established under the Bankruptcy Code. The alternative is worse.

During the hearing on the motion to sell the debtor suggested the Chapter 7 trustee is serving without bond. The day after the hearing, the debtor filed a motion to "stay Lauren Goodman from using the powers of the Chapter 7 trustee." As part of the debtor's motion, the debtor established the trustee had a bond. The U.S. Trustee filed a copy. The debtor then asserted the amount was insufficient. But the U.S. Trustee determines the amount and sufficiency of the bond. *See* 11 U.S.C. § 322(b).

---

[5] The process which brought this property to sale is not the model and should not be emulated. The property was fully encumbered when the Chapter 11 trustee was appointed. The case was clearly a liquidation, and the property could justifiably have been abandoned. Obtaining a benefit *before marketing the property* would be best practice. But a tangible benefit exists.

The debtor had a tool available. He could have filed a motion requiring the trustee abandon the property. *See* 11 U.S.C. § 554(b). The debtor filed such a motion but did not pay the required fee. (Doc. #154). Because the fee was not paid, the motion was denied without prejudice. In the order denying the motion, the court allowed the debtor to proceed on an expedited basis by shortening the 21-day objection / resistance deadline if the debtor re-filed the motion and paid the fee. (Doc. #171). The debtor never did.

The debtor's motion indicates the bond is satisfactory to the U.S. Trustee. Moreover, the amount of the bond does not prevent the sale because a sale can be approved even if no bond is posted. *See W.J. Servs., Inc. v. Com. State Bank of El Campo (In re W.J. Servs., Inc.)*, 990 F.2d 233, 234 (5th Cir. 1993). ("Numerous other courts have held that the failure of a 'de facto' bankruptcy trustee to qualify does not invalidate the trustee's pre-qualification acts."). If the U.S. Trustee determines the bond should be increased based upon recoveries by the Chapter 7 trustee, the U.S. Trustee can revisit the amount. The 1st Circuit used apt language in an opinion regarding offensive use of the trustee's bonding requirement:

> The Appellants' transparent efforts to remove the Trustee in order to permanently extinguish the two adversary proceedings pending against them is a misguided and ill-conceived attempt to avoid facing the merits of the complaints against them.

*Granderson v. Carpenter (In re Granderson)*, 252 B.R. 1, 7 (B.A.P. 1st Cir. 2000). The debtor himself cites *Granderson* in his motion to "stay" the trustee's powers. The debtor's transparent effort to continually hinder the Chapter 7 trustee is a misguided and ill-conceived attempt to avoid facing liquidation of bankruptcy estate assets when the debtor himself requested his case be converted to a Chapter 7 case.

The surcharge of the property is also approved. "The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim[.]" 11 U.S.C. § 506(c). Other than the $724.50 itemized charge for attorney's fees, no party objected to the surcharge. The surcharged amount is reduced by $724.50 because it appears to be unrelated to the secured property. The balance, $8,504.39, is approved. Although not part of the motion to surcharge, the costs of sale are disposition costs under § 506(c) and, to the extent approval under § 506(c) is necessary, are approved as such.

## Conclusion

The trustee's motion to sell (Doc. #438) is approved. The motion does not appear to request to sell tools or equipment of any subcontractor. To avoid any doubt, the sale does not include the tools and equipment of any subcontractor, including ladders, lifts, and temporary electrical lines connected to power boxes. These items cannot be sold. Tools and equipment of subcontractors do not include construction materials or fixtures which are sold to the extent stated in the purchase agreement.

The trustee's motion to surcharge (Doc. #489) is approved in part. Surcharge is approved in the amount of $8,504.39. The agent and brokerage fees, and other costs of sale are approved, to the extent approval under § 506(c) is necessary.

A separate order consistent with the foregoing will be entered.

Dated: March 12, 2026

BY THE COURT:

/s/ Brian S. Kruse
Brian S. Kruse
Chief Judge